STATE of Minnesota, Respondent,

v.

John Wayne MICHAUD, Jr., Appellant.

No. 47975.

Supreme Court of Minnesota.

Feb. 16, 1979.

C. Paul Jones, Public Defender, and Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Keith M. Brownell, County Atty., Duluth, and Brian D. Simonson, Asst. County Atty., Hibbing, for respondent.

PETERSON, Justice.

Defendant, John Wayne Michaud, Jr., was found guilty on March 17, 1977, of aggravated robbery, unauthorized use of a motor vehicle, and aggravated assault. On March 21, 1977, the St. Louis County Attorney filed notice informing defendant that extended-term sentencing would be sought as provided by §§ 609.155[1] and 609.16.[2]

---

**1.** Minn.St. 609.155 provides: "Subdivision 1. 'Extended term of imprisonment' means a term of imprisonment the maximum of which may be for the maximum term authorized by law for the crime for which the defendant is being sentenced multiplied by the number of his prior felony convictions, but not to exceed 40 years.

"Subd. 2. Whoever, having previously been convicted of one or more felonies, commits another felony other than murder in the first degree may upon conviction thereof be sentenced to an extended term of imprisonment if:

"(1) A presentence investigation and report has been made pursuant to section 609.115; and

"(2) Findings are made by the court as required by section 609.16.

"Subd. 3. For purpose of this section a felony shall be that as defined in section 609.02, subdivision 2, notwithstanding the provisions of section 609.13.

"Subd. 4. Subdivision 2 does not apply unless:

"(1) The prior convictions occurred within ten years prior to the commission of the crime of which the defendant presently stands convicted; and

"(2) The prior convictions occurred:

"(a) In this state; or

"(b) In another state and were for crimes which would have been felonies if they had been committed in this state; or

"(c) In a federal court."
(Section 609.155 is repealed effective May 1, 1980. See, L. 1978, c. 723, art. I, § 20.)

**2.** Minn.St. 609.16 provides: "A sentence to an extended term of imprisonment under section 609.155 shall not be imposed unless:

"(1) At the instance of the prosecuting attorney or by order of the court on its own motion, written notice is served by the prosecuting attorney on the defendant or his attorney personally setting forth the prior convictions and advising the defendant that the court may sentence him to an extended term of imprisonment for the crime of which he has been convicted and that he is entitled to be heard thereon if he denies such prior convictions or brings in issue any matter in the presentence report, and fixing a time not less than five days after service of such notice for such hearing and sentence.

"(2) A summary hearing is thereafter held pursuant to such notice at which evidence for and against the imposition of a sentence for an extended term may be received and at which the defendant is entitled to be heard on the issues raised and to be represented by counsel.

After hearing, defendant, on April 22, 1977, was sentenced under § 609.155 to 1 to 40 years for aggravated robbery, 1 to 20 years for aggravated assault, and 0 to 12 years for unauthorized use of a motor vehicle, the sentences to be served concurrently. Defendant appeals from application of the extended term for dangerous offenders provision of the statute and requests that this court modify his sentence. We affirm.

The following facts were established at trial. Defendant entered the Holiday Inn, Duluth, Minnesota, shortly before 2 a. m. on December 24, 1976, went to the front desk, and demanded money from employees working behind the desk. He carried what looked like a can of mace and a .38-caliber revolver. During the robbery, defendant pointed the gun at the employees and was given money from the cash register. He then demanded that the safe be opened. Upon being told by one employee that he did not have the .combination, defendant stated, "You want to die?" When told again that the employees could not unlock the safe, defendant, upon leaving, forced the employees to lie on the floor.

Shortly thereafter, at approximately 2 a. m. of the same day, two Duluth police officers observed an automobile driven by defendant proceed through a stop sign and a red light. As the officers were driving in the direction the automobile was traveling, a transmission came over the police radio regarding the holdup at the Holiday Inn. When the police vehicle drew near the front of the automobile, defendant accelerated and turned the wrong way on a one-way street. An extended chase ensued, until defendant abandoned the automobile and

ran. Other police squads and a highway patrol unit converged upon the area.

At one point, defendant came into view of the highway patrol unit. A patrolman twice commanded him to halt, but each time defendant responded by turning and pointing a gun at the patrolman. At another point, defendant came into view of two officers stationed in the opposite direction. The officers ordered defendant to drop his gun or be shot. He did so and was arrested.

Defendant had, within 10 years prior to the commission of the present crimes, been convicted of four felonies (three burglaries and one uttering and possessing a forged instrument). These felony convictions were listed in the notice filed by the county attorney pursuant to § 609.16.

Together with the filing of notice the presentence investigation report required by § 609.155 was prepared for the trial court. The report included defendant's prior arrest record.[3] The arrest record showed an extensive and steady pattern of criminal offenses from 1965 to 1976. Most of the offenses were for alcohol consumption and automobile theft, with burglary becoming common as defendant got older. Defendant's most recent conviction before the present case involved breaking into a sporting goods store in Superior, Wisconsin, and stealing 27 or 28 guns, most of them handguns.[4] The probation officer who prepared the report noted that defendant's crimes were becoming more serious in nature and that defendant was showing a tendency to involve firearms in his criminal behavior.[5]

Under § 609.16(1, 2), defendant had the opportunity to controvert the convictions

---

"(3) The court finds on the basis of such hearings, the defendant's admissions, the evidence at the trial and the presentence report:

"(a) That the defendant was previously convicted of one or more of the crimes specified in section 609.155; and

"(b) That the defendant is disposed to the commission of criminal acts of violence and that an extended term of imprisonment is required for his rehabilitation or for the public safety."

(Section 609.16 is repealed effective May 1, 1980. See, L. 1978, c. 723, art. I, § 20.)

**3.** Two psychiatric reports were also included in the presentence investigation report.

**4.** Defendant sold most of these guns. The burglary took place on February 23, 1975. On June 19, 1975, defendant was arrested in Superior, Wisconsin, on a charge of theft and possession of a controlled substance. In the process of a high-speed automobile chase with police, defendant threw out of his window one of the handguns taken in the February burglary.

**5.** The probation officer advised in his report that the dangerous offender statute be utilized.

listed in the notice and to deny any matter found in the presentence investigation report. Nevertheless, defendant came before the trial judge on April 22, 1977, for sentencing and waived the hearing. Likewise, defendant indicated that he did not wish to challenge the information contained in the presentence report, with one exception which was subsequently deleted. He did not challenge the fact of the prior convictions. Defendant did argue that there was insufficient information from which the court could conclude that he was disposed to the commission of criminal acts of violence.

 Under § 609.16(3), the state must prove a defendant is disposed to the commission of criminal acts of violence and that an extended term of imprisonment is required for his rehabilitation or for the public safety. The proof required is a fair preponderance of the evidence. *State v. Piri*, 295 Minn. 247, 253, 204 N.W.2d 120, 124 (1973). The trial court found that the state met this burden. Defendant argues that the evidence before the trial court was insufficient to sustain its finding that defendant is disposed to criminal acts of violence. To overturn the trial court's finding, this court must find that it was clearly erroneous. *State v. Bellcourt*, Minn., 251 N.W.2d 631 (1977).

As required by § 609.16(3), the trial court based its findings on defendant's admissions, the evidence at trial, and the presentence report. The evidence at trial resulted in defendant's being found guilty of two separate acts, aggravated robbery and aggravated assault. Each crime involved pointing a gun at someone. Defendant also threatened one employee with death during the robbery. The presentence report contained defendant's prior arrest record, revealing an extensive and escalating pattern of criminal offenses. Defendant did not challenge any of the pertinent information in the presentence report. Taken as a

whole, the evidence demonstrates that the trial court's findings were not clearly erroneous.

 Defendant contends that the only evidence suggesting violent behavior is the present convictions and that a single incident of violent conduct does not indicate a "disposition" toward violent acts. Defendant's position is based on a misunderstanding of the dangerous offender statute. Under the mechanical approach of the previous statute, Minn.St. 1957, §§ 610.28 to 610.32, prior convictions automatically resulted in an increased penalty for a later offense. By adopting §§ 609.155 to 609.16, the legislature abandoned the recidivist approach and replaced it with a system discretionary with the trial judge whether or not the extended term is imposed, such decision being based upon judicial scrutiny of the whole individual. The legislature did not provide or demand specific standards by which a judge determines whether an offender should be sentenced to an extended term. It did require that the trial court find on the basis of defendant's admissions, the evidence at trial, the presentence report, and the hearing discussing evidence for and against imposition of an extended sentence that the defendant was previously convicted of one or more of the crimes specified in § 609.155, that defendant is disposed to the commission of criminal acts of violence, and that an extended term of imprisonment is required for his rehabilitation or the public safety. This does not mean that a defendant must be convicted of more than one crime of violence before he can be determined to be a dangerous offender. A single incident of violence may be sufficient if, based on information such as the trial evidence and the presentence investigation report, it appears the offender is disposed to such crimes.[6] There is sufficient evidence of such a disposition in this case.

---

**6.** Even if defendant were correct in his assertion that in order to find under § 609.16 that a defendant is disposed to the commission of criminal acts of violence, at least two separate incidents of violent conduct must be demonstrated, the present decision would be the

same. Defendant was found guilty of two separate crimes. Each crime involved pointing a gun at someone. Each crime involved different victims and took place at different locations. Contrary to defendant's assertion, the present crimes were not all part of the same incident.

Defendant's other major argument is that § 609.16, as applied to him, denied due process of law because of the vagueness and uncertainty in that statute of the phrase "disposed to the commission of criminal acts of violence."[7] In effect, defendant argues that these statutory guidelines illuminated only evidence of a subjective character and evidence of questionable weight. Defendant's position is based on the contention that the present crimes are not sufficient to indicate such a disposition and that the necessary propensity toward criminal acts of violence cannot be established by the presentence investigation report because this report contained only old psychiatric reports, the summary and recommendation of the probation officer, and defendant's arrest record.

Defendant's challenge is to due process as the statute was applied to him. That challenge must fail on this record. The necessary propensity toward commission of crimes of violence can be seen in the events of December 24, 1976. The jury found defendant guilty of aggravated robbery and aggravated assault. Each offense involved pointing a gun at someone, and one victim was verbally threatened with death. The actions furnished an objective evidentiary basis from which reasonable inferences toward violence could have been drawn. Supplementary objective evidence could have been found in defendant's prior arrest record, particularly including the burglary and theft of several guns. Furthermore, defendant cannot persuasively argue that he was unaware that these offenses would fall within the phrase "criminal acts of violence." Defendant was not denied due process of law by the application of the dangerous offender statute.

It should nevertheless be cautioned that the statute should not uncritically be invoked. Because prediction of dangerousness or violence is inherently difficult,[8] the judicial discretion accorded by the statute should be exercised with care, subject to judicial review. We note that the legislature has replaced the dangerous offender statute with new sentencing guidelines effective May 1, 1980. We think it unlikely that prosecutors in the interim will proceed under §§ 609.155 and 609.16 except in those cases where, as here, an extended term is fully justified.

Defendant also urges for the first time on appeal and without briefing the point that the statute as applied magnified his punishment in violation of double jeopardy protections and that such an argument can never be waived. The cases cited by defendant, *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); and *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), do not adequately establish his contention of nonwaiver. We believe defendant has clearly waived the double jeopardy claim. See, e. g., *United States v. Perez*, 565 F.2d 1227 (2 Cir. 1977).

Affirmed.

---

7. Defendant contended in his brief to this court that the vagueness and uncertainty of that phrase made § 609.16 facially invalid. In oral argument, defendant confined his argument to the claim that § 609.16 was invalid as applied to him.

8. See, Ennis and Litwack, *Psychiatry and the Presumption of Expertise: Flipping Coins in the Courtroom*, 62 Cal.L.Rev. 693; Note, 3 Wm. Mitchell L.Rev. 193, 195, note 14.